UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| R. ALEXANDER ACOSTA, | ) | |
| U.S. Secretary of Labor, | ) | Civil Action No. 1:17-cv-6325 |
| | ) | |
| Plaintiff, | ) | COMPLAINT FOR |
| | ) | ERISA VIOLATIONS |
| v. | ) | (29 U.S.C. § 1001 et seq.) |
| | ) | |
| WILMINGTON TRUST, N.A. f/k/a | ) | |
| WILMINGTON TRUST RETIREMENT AND | ) | |
| INSTITUTIONAL SERVICES; and THE HCMC | ) | |
| LEGAL, INC. EMPLOYEE STOCK | ) | |
| OWNERSHIP PLAN, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT FOR ERISA VIOLATIONS

Plaintiff R. Alexander Acosta, U.S. Secretary of Labor (the Secretary), alleges as follows:

1.     This action is filed under the Employee Retirement Income Security Act of 1974 (ERISA), as amended, 29 U.S.C. § 1001, et seq., against Wilmington Trust, N.A. (Wilmington), the trustee of the HCMC Legal Inc. Employee Stock Ownership Plan (ESOP or Plan), to obtain relief under ERISA sections 409 and 502(a)(2) and (5), 29 U.S.C. §§ 1109, 1132(a)(2), (5), to redress violations and enforce the provisions of Title I of ERISA.

2.     ERISA requires ESOP trustees, such as Wilmington, to protect the interests of ESOP participants and ensure that the ESOP pays no more than fair market value for any stock that it purchases.  Rather than protect those interests, Wilmington failed to prudently investigate the value of HCMC's stock and improperly relied on a flawed, inflated valuation of the stock's value in approving the ESOP's purchase of 100% of

HCMC's stock.  Specifically, the valuation included a premium for control of HCMC even though the ESOP did not acquire control of the company and failed to account for the value of millions of warrants that gave other parties to the transaction the right to buy nearly 50% of HCMC stock at a preset price in the future – and thereby dilute the ESOP's equity stake.  Despite these obvious red flags, Wilmington made no effort to negotiate the ESOP's purchase price and merely accepted the price presented to it.  Wilmington's failures resulted in the ESOP purchasing 100% of HCMC Legal Inc.'s common stock for millions of dollars more than it was worth.

3.      By failing to protect the interests of the ESOP and its participants and beneficiaries and authorizing the ESOP's purchase of HCMC's stock for more than its fair market value, Wilmington violated ERISA's prohibited transaction provisions, breached its fiduciary duties of prudence and loyalty, and failed to adhere to plan documents.

## JURISDICTION & VENUE

4.      This Court has jurisdiction over this action pursuant to ERISA section 502(e)(1), 29 U.S.C. § 1132(e)(1).

5.      Venue with respect to this action lies in the United States District Court for the Southern District of New York, pursuant to ERISA section 502(e)(2), 29 U.S.C. § 1132(e)(2).

## PARTIES

6.      Plaintiff, the Secretary, is vested with authority to enforce the provisions of Title I of ERISA by, among other things, filing and prosecuting claims against fiduciaries and other parties who violate Title I of ERISA.  29 U.S.C. § 1132(a)(2) and (5).

2

7.      Defendant Wilmington Trust, N.A., f/k/a Wilmington Trust Retirement and Institutional Services, is a publicly owned corporation with its principal place of business in Wilmington, Delaware.  Wilmington is a full-service trust company whose services include serving as the trustee of employee stock ownership plans.  At all relevant times, as trustee of the ESOP, Wilmington:  (1) exercised discretionary authority or discretionary control respecting management of the ESOP; (2) exercised authority or control respecting management or disposition of the ESOP's assets; and/or (3) had discretionary authority or discretionary responsibility in the administration of the ESOP, and therefore was a fiduciary of the ESOP pursuant to ERISA sections 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(A)(i), (iii).

8.      The ESOP is an employee pension benefit plan as defined by ERISA section 3(2)(A), 29 U.S.C. § 1002(2)(A), and is subject to ERISA pursuant to ERISA section 4(a)(1), 29 U.S.C. § 1003(a)(1).  The ESOP also includes the HCMC Legal Inc. Employee Stock Ownership Trust, which held the ESOP's assets.  The ESOP is joined as a party defendant pursuant to Rule 19(a) of the Federal Rules of Civil Procedure, solely to assure that complete relief can be granted.

## GENERAL ALLEGATIONS

9.      Lynn Mestel is the founder of two companies:  HC2, Inc. (d/b/a Hire Counsel) and The WOB Company, Inc. (d/b/a Mestel & Company), referred to collectively hereafter as "HCMC" or "the Company."  Hire Counsel provides temporary legal staffing for law firms and corporate clients.  Mestel & Company provides legal placement services for experienced attorneys.

3

10.     In 2010, Mestel owned 100% of Mestel & Company, and 91% of Hire Counsel.  Mestel's daughter, Willa Fawer, owned the remaining 9% of Hire Counsel. (Ms. Mestel and Ms. Fawer are referred to collectively as the selling shareholders). In June 2010, Mestel retained Daroth Capital Advisors (Daroth) as a financial adviser to market HCMC and to find either a purchaser or outside investors for the companies.

11.     Daroth located Long Point Capital, Inc. (Long Point), a private equity firm, as a potential purchaser/investor.

12.     On January 3, 2011, Mestel signed a letter of intent with Long Point for a proposed transaction involving HCMC.  Long Point was to lend $10 million in connection with a proposed transaction that called for "the purchase by an Employee Stock Ownership Plan of 100% of the common stock" of HCMC.  An attached Preliminary Term Sheet stated that the purchase price to be paid by the ESOP would be based on a $44 million enterprise value.

### Mestel Engages Wilmington as Trustee

13.     Long Point recommended to Mestel that Wilmington be retained as the trustee for the ESOP for the purpose of considering the ESOP's potential purchase of HCMC stock.  On January 4, 2011, Mestel's counsel sent Wilmington a copy of the Preliminary Term Sheet.

14.     Mestel chose Wilmington as the ESOP's trustee on January 18, 2011, and notified Wilmington of the selection the next day, January 19, 2011.  Wilmington was formally appointed as the ESOP's trustee on March 2, 2011, pursuant to an engagement agreement between Wilmington and HCMC (Engagement Agreement).

15.     HCMC and Wilmington understood that Wilmington would remain as the ESOP's trustee, on an ongoing basis, after the ESOP Transaction closed.  Under the Engagement Agreement, as ongoing trustee, Wilmington would be paid the following annual trustee fees:  (a) a base fee of $10,000; (b) a percentage of the market value of the assets held by the ESOP, subject to a minimum annual fee of $15,000; (c) participant disbursement fees; (d) ancillary fees; and (e) "float" income on certain cash accounts, moneys, and distributions involved in overseeing the ESOP.  Accordingly, Wilmington had a financial incentive to approve the ESOP Transaction because it would only receive the ongoing annual trustee fees if it approved the ESOP's purchase of HCMC's stock.

16.     Wilmington had never rejected a potential ESOP transaction after signing an engagement letter and agreeing to act as the trustee for a proposed ESOP transaction.

**Wilmington Accepts Long Point's and Mestel's Recommendation to Use Chartwell as Wilmington's Valuation Firm**

17.     The Engagement Agreement required Wilmington to retain a "qualified independent financial advisor/valuation firm" to analyze the fair market value of the HCMC stock and opine on whether the ESOP's purchase of that stock would be financially fair to the ESOP.

18.     Wilmington had no prior experience buying, selling, or operating a staffing or placement company and no expertise about such companies, including, specifically, staffing or placement companies in the legal industry in which HCMC operated.

19.     Long Point recommended Chartwell Capital Solutions (Chartwell) to be the ESOP's financial advisor/valuation firm to analyze the proposed transaction.  Mestel's counsel concurred in Long Point's recommendation of Chartwell.

20.     On January 19, 2011 – the same day that Wilmington learned that it had been chosen as trustee for the HCMC ESOP transaction – Wilmington agreed to use Chartwell. This decision was made without any serious consideration of other financial advisor/valuation firms.

21.     Prior to retaining Chartwell, Wilmington did not investigate Chartwell's experience with valuing or analyzing staffing or placement companies, and specifically its experience with valuing staffing or placement companies in the legal industry.  Similarly, Wilmington did not inquire about the analyses and valuation approaches that Chartwell would use for the HCMC ESOP transaction, even though the January 3, 2011 Preliminary Term Sheet between Long Point and Mestel detailed issues raised by the proposed transaction, including the issuance of warrants that could dilute the ESOP's equity purchase and the composition of HCMC's Board of Directors.

22.     Wilmington formally retained Chartwell via an engagement letter dated March 8, 2011.

23.     Chartwell's engagement letter states that "[a]s financial advisor to the Trustee on the Transaction, Chartwell will provide the trustee, if Chartwell deems it to be the case, a written opinion as of the date of the Transaction that . . . [t]he consideration to be paid by the Trust for its shares of the Company stock pursuant to the terms of the Transaction is not greater than the fair market value of such shares."

**Chartwell's Receipt of Information about HCMC and the Proposed Transaction**

24.     On March 10, 2011, Chartwell and Wilmington attended a meeting with individuals from HCMC at which they received a presentation about the Company.

25.     The primary source of information for Chartwell's valuation analysis was information placed into a data room by Daroth, which represented Mestel and HCMC.

26.     Chartwell also relied on information obtained from Long Point even though, as Long Point has acknowledged, Long Point was "not watching out for the interest of the ESOP."

27.     Long Point's participation in the HCMC ESOP transaction was to loan $10 million to HCMC at 15% annual interest.  In addition to the 15% interest on its $10 million loan, Long Point was to receive over 21.7 million warrants for HCMC stock. Long Point was also accorded two seats on HCMC's Board of Directors and the authority to veto any meaningful action otherwise taken by the Board.  Long Point was also to be paid an annual $250,000 "management fee" for sitting on HCMC's Board of Directors.

28.     In connection with their sale of stock to the ESOP, the selling shareholders were to issue a loan of $10.33 million to HCMC, also at 15% interest.  The selling shareholders were also to receive over 22.4 million warrants for HCMC stock, and were also accorded two seats on HCMC's Board of Directors.

29.     On April 22, 2011, Chartwell prepared a list of financial issues revealed by its analysis of the proposed HCMC ESOP transaction.  According to Wilmington's counsel, Chartwell's primary concern was the ESOP's purchase price.  Chartwell's list of issues stated that the ESOP's acquisition note for the proposed ESOP transaction – i.e., the purchase price – should be *reduced* by 25%.  That did not happen.

30.     On August 10, 2011, Chartwell provided Wilmington with its final valuation report (Appraisal Report) in connection with the August 22, 2011 ESOP transaction.  On August 22, 2011, Wilmington, acting on the ESOP's behalf, authorized

the ESOP's purchase of 100% of the issued and outstanding common stock of HCMC for $46 million, or $1.00 per share (ESOP Transaction).

## ERISA VIOLATIONS

## CHARTWELL FAILS TO PROPERLY VALUE HCMC

**Chartwell Fails to Account for the Fact that Long Point and the Selling Shareholders Obtained Control of HCMC, and Millions of Warrants, at the Expense of the ESOP**

31.     In valuing HCMC, Chartwell considered it significant that Long Point was lending its own money in the transaction in connection with the proposed transaction. According to Chartwell, Long Point's participation in the transaction provided "comfort" that the $44 million value set forth in the January 3, 2011 Preliminary Term Sheet was appropriate.

32.     Chartwell failed, however, to appreciate that under the terms of the ESOP Transaction, Long Point stood in a very different position from the ESOP.  In critical respects, Long Point would benefit from the transaction in ways that the ESOP would not – and indeed, Long Point would receive these benefits *at the ESOP's expense*.  In particular, under the terms of the ESOP Transaction, Long Point would obtain control over HCMC together with the selling shareholders (but not the ESOP), Long Point and the selling shareholders would receive over 44 million warrants to purchase nearly 50% of HCMC's stock at a later date, and Long Point would receive a $250,000 yearly management fee.  Chartwell's Appraisal Report addressed none of these items in its determination of the fair market value of the HCMC stock that the ESOP was to purchase.

### (a) <u>Failure to Assess a Lack of Control Discount</u>

33.     The HCMC ESOP Transaction called for the ESOP to purchase 100% of HCMC's stock.  The DCF method on which Chartwell's Appraisal Report relied included a valuation premium for the ESOP's purchase of a controlling interest in the Company.

34.     Generally, investors pay a premium to purchase the majority of a company's common voting stock and gain control over a company because such control confers extensive and valuable rights and powers concerning the company's ongoing business and affairs.  These rights and powers include, for example, controlling a company's Board of Directors, determining whether the company should engage in mergers or acquisitions, and hiring or terminating corporate officers.  Minority investors, in contrast, do not have the rights and powers of control and therefore pay a discounted price for their investment stake.

35.     According to Wilmington, the median premium that is paid for stock where the buyer acquires control of a company is over 33%; conversely, the median discount for stock where the buyer does not acquire control is 25%.

36.     While Chartwell's Appraisal Report valued the ESOP's purchase based on a control premium, the ESOP did not, in fact, acquire control of HCMC with its purchase of HCMC stock.  Under the governing documents, HCMC was to be controlled by Long Point in conjunction with the selling shareholders – but not by the ESOP.

37.     Specifically, the HCMC Board of Directors controlled the "business and affairs" of HCMC.  Although the ESOP was buying 100% of HCMC's common stock in the ESOP Transaction, the ESOP did not have:  (1) any seats on the five-member HCMC Board of Directors; or (2) any right to determine the composition of the Board of

Directors.  Wilmington, the ESOP's Trustee, never sought a seat on  the Board of Directors on behalf of the ESOP.  Instead, HCMC's Board of Directors was comprised of the two selling shareholders, two representatives of Long Point, and one member chosen by the other four.  Wilmington understood that, under the terms of the ESOP Transaction, the ESOP would have no role in determining the composition of the Board of Directors.

38.     Although Long Point and the selling shareholders had equal control over HCMC's Board of Directors, Long Point had ultimate control over HCMC because, under the Investor Rights Agreement that was part of the HCMC ESOP Transaction, even HCMC's Board of Directors was forbidden from taking any important actions without Long Point's approval.  Among other things, the Board could not – without Long Point's approval – conduct business operations, amend or restate corporate documents, change the number of Board members, adopt a budget or business plan, dissolve or liquidate the Company for bankruptcy purposes, sell or transfer in any manner assets of the Company, issue stock, engage in mergers or consolidations, hire or terminate officers, commence or settle any litigation, enter into any contracts or agreements affecting HCMC's structure, or hire or fire any auditors or legal counsel.  Thus, even HCMC's Board, which had no ESOP members, was subject to Long Point's approval for virtually all vital decision making for HCMC.

39.     Chartwell's April 22, 2011 list of financial issues acknowledged that "the ESOP is paying for control."   The same document identified a series of financial issues that reflected the ESOP's lack of control over HCMC.  For example, it included a request that "[a]ny issuance of securities" and that "[a]ny buyback of securities" by the Company "be subject to ESOP approval based on an opinion of the independent financial advisor."

The document highlighted the fact that the ESOP was not obtaining the control over HCMC that it was paying for – i.e., it could not control the Company's issuance or buyback of securities.

40.     Wilmington's counsel recognized that the ESOP would not control HCMC's Board of Directors, and that instead the Board would be controlled by the selling shareholders and Long Point.

41.     Chartwell's Appraisal Report contained no examination, discussion, or analysis of HCMC's corporate bylaws or the Investor Rights Agreement.  Accordingly, the Appraisal Report did not account for the fact that Long Point and the selling shareholders' (rather than the ESOP) would have control over HCMC, and it failed to reflect any corresponding impact on the fair market value of the ESOP's purchase.

42.     The ESOP therefore paid for control over HCMC that it did not acquire. Since Chartwell's Appraisal Report valued HCMC on a controlling interest basis, it should have applied a lack-of-control discount to reduce the company's valuation and the ESOP's purchase price.  It did not do so, and Wilmington approved the ESOP's purchase without the necessary price reduction for the ESOP's lack of control.

### (b) Failure to Value Warrants

43.     As part of the ESOP Transaction, HCMC issued millions of warrants to the selling shareholders and Long Point.  The warrants gave the selling shareholders and Long Point the right to purchase up to 49% of HCMC stock in the future at a pre-set price.  The warrants were an important incentive for Long Point's participation in the transaction. But from the ESOP's perspective, Long Point's and the sellers' ability to acquire up to

49% of HCMC stock, and thereby dilute the value of the ESOP's stock, severely diminished the value of the stock the ESOP purchased.

44.     Chartwell knew and advised Wilmington that the warrants that would be issued to the selling shareholders and Long Point in the ESOP Transaction had significant value.  But Wilmington failed to ensure that Chartwell incorporated that value into its Valuation Report, and Chartwell's report did not ascribe *any* value to the warrants in determining the fair market value of the ESOP's purchase.  Wilmington and Chartwell should have ensured that the valuation valued the warrants properly and reduced the price that the ESOP was willing to pay accordingly.  They did not do so.

### (c) Failure to Account for Long Point's Management Fee

45.     Pursuant to the terms of the ESOP Transaction, Long Point would receive a yearly $250,000 management fee for sitting on HCMC's Board of Directors.  Other members of HCMC's Board were not scheduled to receive a similar payment or fee.  The ESOP, which had no seat on the Board, would also not receive any similar yearly payment or fee.

46.     Long Point's fee was to be paid by HCMC, resulting in a substantial reduction in its cash flows.  Chartwell's Appraisal Report does not, however, contain any mention of Long Point's fee, and therefore does not examine, discuss, or analyze the impact of the fee on the fair market value of the ESOP's purchase.  Wilmington likewise failed to ensure that Chartwell incorporated an analysis of the fee into the Appraisal Report.  Wilmington and Chartwell should have ensured that Long Point's fee was properly accounted for in determining the price that the ESOP was willing to pay.  They did not do so.

## WILMINGTON APPROVES THE PURCHASE PRICE AND PROPOSED TRANSACTION WITHOUT PRUDENT INVESTIGATION

47.     Chartwell made three presentations to Wilmington's Fiduciary Services Sub-Committee (Committee) concerning the HCMC ESOP transaction.  During the latter two presentations, Chartwell concluded that a $44 million enterprise value – the value agreed upon by Mestel and Long Point in January 2011 – was fair to the ESOP.

48.     The Committee approved the proposed ESOP Transaction at the last two meetings in May and July 2011, based on a near-final draft of the Appraisal Report.

49.     Wilmington agreed to the purchase price without engaging in any meaningful price negotiation on behalf of the ESOP.  The purchase price and material economic terms of the ESOP Transaction never changed from the January 3, 2011 Preliminary Term Sheet between Mestel and Long Point to Wilmington's approval of the purchase price and the closing more than seven months later.

50.     On August 22, 2011, Wilmington, acting on the ESOP's behalf, authorized the ESOP's purchase of 100% of the issued and outstanding common stock of HCMC for $46 million, or $1.00 per share.  The purchase price of $46 million included $2 million in transaction fees added to the pre-determined $44 million enterprise value.

51.     Wilmington approved the ESOP's purchase without prudent investigation of the deficiencies in Chartwell's valuation or the appropriateness of the price the ESOP paid for the stock.

### The Trust Agreement's Requirements Regarding the Trustee's Duties and Responsibilities

52.     Three days before Wilmington authorized the ESOP's purchase of HCMC, on August 19, 2011, HCMC and Wilmington entered into a trust agreement for the ESOP (the "Trust Agreement"), effective that same date.

53.     Section 2.03 of the Trust Agreement states that the "Trustee shall discharge its duties . . . solely in the interest of Plan Participants and other persons entitled to benefits under the Plan."

54.     Section 2.03(b) of the Trust Agreement states that the trustee shall discharge its duties "with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

55.     Section 2.04 of the Trust Agreement states that Wilmington "shall have full authority and direction" with respect to the investment of Trust assets in HCMC stock, "provided the Trustee does not pay in excess of adequate consideration, as defined by ERISA."

56.     Section 3.01 of the Trust Agreement states that "[a]ll purchase or exchanges of Company Stock shall be for no more than 'adequate consideration,' as defined in Section 3(18) of ERISA."  Section 3.01 further states:  "If there is no generally recognized market for Company Stock, 'adequate consideration' shall mean the fair market value of such Company Stock, determined in good faith by the Trustee."

**Wilmington Fails to Act in the ESOP's Interest**

57.     Wilmington failed to act in the ESOP's interest and failed to fulfill its duties as trustee by, among other things:

(a) hiring Chartwell as its financial advisor without properly questioning and scrutinizing its qualifications and valuation approach;

(b) failing to critically question and scrutinize Chartwell and its Appraisal Report regarding the analyses and conclusions in the Report;

(c) failing to ensure that Chartwell's Appraisal Report calculated a discount for the ESOP's lack of control and failing to seek and obtain a reduced purchase price based on that discount;

(d) failing to ensure that Chartwell's Appraisal Report assigned value to the warrants being issued in the HCMC ESOP Transaction in considering the fair market value of the stock the ESOP was purchasing and failing to seek and obtain a reduced purchase price based on the value of those warrants;

(e) failing to ensure that Chartwell's Appraisal Report addressed Long Point's receipt of a large yearly management fee, and failing to seek and obtain a reduced purchase price based on the value of that fee;

(f) failing to meaningfully negotiate the price of the ESOP's purchase of HCMC stock, including by using the issues with Chartwell's valuation described above as the basis for a lower price; and

(g) failing to seek a reduction in the purchase price of the transaction by 25% for financial fairness, as stated by Chartwell in its financial issues list.

58.     Wilmington relied on Chartwell's Appraisal Report in approving the HCMC ESOP Transaction without ensuring that Chartwell properly addressed the deficiencies described above or independently analyzing or critically questioning Chartwell regarding these deficiencies.

59.      Wilmington did not press for or insist on any changes to Chartwell's analysis or conclusions, including reductions in the fair market value of the ESOP's purchase that reflected the issuance of warrants that could dilute the ESOP's equity by nearly 50%, the ESOP's lack of control over the Company it was paying for control of, and the yearly $250,000 payment to Long Point.

60.      Wilmington, which was supposed to be the fiduciary for the ESOP, took no action to negotiate the price of the ESOP's stock purchase. It simply accepted the price that had been set by the selling shareholders and Long Point.  In particular, Wilmington failed to appreciate, account for, and address the substantially different position of the ESOP relative to other parties in the ESOP Transaction who were to receive millions of warrants, control over HCMC, and large fees – none of which the ESOP received – all at the ESOP's expense.  Nor did Wilmington advocate on behalf of the Plan that these deficiencies in Chartwell's valuation described above, or any other information, justified a lower purchase price for the HCMC ESOP transaction.

61.      As a result, Wilmington breached its fiduciary duties and the ESOP significantly overpaid for the HCMC stock.

## The Indemnification Agreements

62.      HCMC and Wilmington have two separate indemnification provisions, one in the Engagement Agreement and the other in the Trust Agreement.

63.      The indemnification in Section 10 of the Engagement Agreement requires HCMC to indemnify Wilmington for any loss, cost, expense or other damage, including attorney's fees, resulting from any legal proceedings related to Wilmington's services as trustee for the ESOP Transaction.  This indemnification contains an exception relieving

16

HCMC from having to indemnify Wilmington if it is prohibited by ERISA, or if any loss, cost, expense or damage (including fees) for which Wilmington seeks indemnification is held by a court to have resulted from Wilmington's gross negligence or willful misconduct.

64.     Thus, according to the indemnification provisions in the Engagement Agreement, HCMC must indemnify Wilmington even if Wilmington violates ERISA, unless Wilmington is held by a court to have engaged in gross negligence or willful misconduct.

65.     The indemnification provision in Section 9.01 of the Trust Agreement requires HCMC to indemnify Wilmington for any loss, cost, expense, or other damages, including attorney's fees, suffered by Wilmington as a result of any legal proceedings related to Wilmington's services under the Agreement.  This indemnification specifically applies to directed, non-discretionary actions taken by Wilmington and covers expenses that Wilmington incurs to enforce this same provision.

66.     The indemnification in the Trust Agreement relieves HCMC from having to indemnify Wilmington if any loss, cost, expense, or damage for which Wilmington seeks indemnification is held by a court, in a final judgment from which no appeal is taken, to have resulted from Wilmington's gross negligence or willful misconduct or material violation or breach of any fiduciary duty imposed under ERISA.

67.      By its terms, the indemnification in the Trust Agreement does not apply to Wilmington's consideration and approval of the ESOP Transaction.

68.     If the indemnification agreement in the Trust Agreement were deemed to apply to Wilmington's consideration and approval of the ESOP Transaction, then HCMC

would indemnify Wilmington unless a court issued a final unappealable judgment that Wilmington materially breached its fiduciary duties under ERISA or engaged in gross negligence or willful misconduct.

69.     Under the indemnification provisions in both the Engagement Letter and Trust Agreement, HCMC and therefore the ESOP (and HCMC's employees) would be obligated to indemnify Wilmington in the event that Wilmington settles this action, even if Wilmington violated ERISA by approving the ESOP Transaction.

70.     As the 100% shareholder of HCMC stock, the ESOP would bear the burden of HCMC's indemnification obligation if payments under either of these indemnification provisions were made.

## FIRST CLAIM FOR RELIEF

### (Against Defendant Wilmington Trust for Violations of ERISA § 404(a)(1))

71.     Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the Secretary adopts and incorporates by reference the averments and allegations of paragraphs 1 through 70 inclusive.

72.     As a fiduciary of the ESOP, Defendant Wilmington had a duty to act prudently and solely in the interests of the ESOP and its participants and beneficiaries. This duty includes the duty to thoroughly and objectively review and analyze any valuation of HCMC stock upon which the ESOP's purchase price would be based.

73.     Chartwell's Appraisal Report had significant flaws and inaccuracies that would have been uncovered during a thorough and objective review and analysis by a responsible ESOP fiduciary, including:

18

(a)  valuing the HCMC stock that the ESOP was to purchase on a controlling interest basis when the ESOP was not acquiring control of HCMC;

(b) failing to reduce the value of the HCMC stock the ESOP was to purchase because of the millions of warrants to be issued to Long Point and the selling shareholders as part of the ESOP Transaction; and

(c) failing to reduce the value of the HCMC stock the ESOP was to purchase because of the annual management fee to be paid to Long Point.

74.    Wilmington failed to protect the ESOP and its participants and beneficiaries' interests by, among other things:

(a) failing to critically question and scrutinize Chartwell and its Appraisal Report regarding the analyses and conclusions in the Report;

(b) failing to ensure that Chartwell's Appraisal Report calculated a discount for the ESOP's lack of control and failing to seek and obtain a reduced purchase price based on that discount;

(c) failing to ensure that Chartwell's Appraisal Report assigned value to the warrants being issued in the HCMC ESOP Transaction in considering the fair market value of the stock the ESOP was purchasing and failing to seek and obtain a reduced purchase price based on the value of those warrants;

(d) failing to ensure that Chartwell's Appraisal Report addressed Long Point's receipt of a large yearly management fee, and failing to seek and obtain a reduced purchase price based on the value of that fee; and

(e) failing to meaningfully negotiate the price of the ESOP's purchase of HCMC stock, including by using the issues with Chartwell's valuation described above as the basis for a lower price.

75.     By failing in all of the foregoing respects, Wilmington caused the ESOP to purchase HCMC stock for significantly more than fair market value.

76.     Wilmington's decision, on behalf of the ESOP, to enter the ESOP Transaction violated ERISA and the Trust Agreement, both of which required that the trustee perform its duties solely in the interests of the Plan's participants and beneficiaries, discharge its duties with prudence and loyalty, and ensure that all purchases of HCMC stock by the trustee be made only at prices which do not exceed the fair market value as of the date of purchase.

77.     By its actions and failures to act as described above, Wilmington:

(a) failed to discharge its duties with respect to the Plan solely in the interest of the participants and beneficiaries of the Plan and for the exclusive purpose of providing benefits and defraying reasonable expenses of plan administration, in violation of ERISA section 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

(b) failed to act with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B); and

(c) failed to act in accordance with the documents and instruments governing the Plan insofar as such documents and instruments are consistent with ERISA, in violation of ERISA section 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

78.    As a result of the conduct as described above, Wilmington caused losses to the ESOP for which it is liable pursuant to ERISA section 409(a), 29 U.S.C. § 1109(a).

## SECOND CLAIM FOR RELIEF

**(Against Defendant Wilmington for Violations of ERISA § 406(a))**

79.    Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the Secretary adopts and incorporates by reference the averments and allegations of paragraphs 1 through 78 inclusive.

80.    As a fiduciary to the ESOP, Wilmington was prohibited from causing the ESOP to engage in a transaction that constitutes the sale or exchange of property between the ESOP and a "party in interest" to the ESOP, and was prohibited from transferring any assets of the ESOP to a party in interest.  ERISA § 406(a)(1)(A) & (D), 29 U.S.C. § 1106(a)(1)(A) & (D).

81.    As the owner of over 50% of stock in Mestel & Company and Hire Counsel (two incorporated entities), and 10% or more of HCMC at the time of the ESOP Transaction, Mestel was a "party in interest" to the ESOP under ERISA sections 3(14)(E)(iii) and (H), 29 U.S.C. §§ 1002(14)(E)(iii) and (H).  In addition, Mestel and Willa Fawer, as officers or directors (or individuals having powers similar to officers or directors) of HCMC, were parties in interest under ERISA section 3(14)(H), 29 U.S.C. §

1002(14)(H), and Fawer was also a party in interest under ERISA section 3(14)(F), as Mestel's daughter.

82.     By causing the ESOP to purchase HCMC stock from Mestel and Fawer pursuant to the ESOP Transaction, Wilmington:

> (a) caused the ESOP to engage in transactions that it knew or should have known constituted the sale or exchange, or leasing, of any property between the plan and parties in interest, in violation of ERISA section 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A); and

> (b) caused the ESOP to engage in transactions that it knew or should have known constituted direct or indirect transfers of the ESOP's assets to, or use of the ESOP's assets by or for the benefit of, parties in interest, in violation of ERISA section 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

83.     As a result of the conduct described above, Wilmington caused the ESOP to enter into a transaction that is prohibited by ERISA section 406(a), 29 U.S.C. § 1106(a).

84.     As a result of the conduct, Wilmington caused losses to the ESOP for which it is liable pursuant to ERISA section 409(a), 29 U.S.C. § 1109(a).

### **THIRD CLAIM FOR RELIEF**

**(Against Wilmington for Entering Into
Indemnification Agreements that are Void Under ERISA § 410)**

85.     Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the Secretary adopts and incorporates by reference the averments and allegations of paragraphs 1 through 84 inclusive.

86.     ERISA § 410(a) provides that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility,

obligation or duty under this part shall be void as against public policy[.]"  29 U.S.C. § 1110(a).  A fiduciary is impermissibly relieved of responsibility or liability for its ERISA fiduciary duties when an ERISA plan itself bears some of the burden of indemnifying a fiduciary for its fiduciary breaches.  See 29 C.F.R. § 2509.75–4.

87.     As set forth in paragraphs 73-81 above, HCMC's indemnification agreements with Wilmington could require HCMC to pay all of Wilmington's losses, costs, expenses and damages incurred in connection with any legal proceeding relating to Wilmington's performance as the ESOP's trustee in circumstances in which Wilmington has violated its fiduciary duties under ERISA.  As the 100% shareholder of HCMC, the ESOP and HCMC's employees would bear the full burden of HCMC's indemnification obligation.

88.     To the extent that Wilmington is permitted to recover any money from HCMC pursuant to an indemnification agreement that would relieve Wilmington from responsibility or liability for the ERISA violations described above, such payments would violate ERISA and render the agreements void under the anti-exculpatory provisions set forth in ERISA section 410(a), 29 U.S.C. § 1110(a).

89.     Any attempt by Wilmington to enforce these agreements or to receive payments under them would be a violation of Wilmington's duties of loyalty and prudence with respect to the ESOP and the duty to only act in accordance with plan documents insofar as they are consistent with ERISA.  ERISA §§ 404(a)(1)(A), (B), and (D), 29 U.S.C. §§ 1104(a)(1)(A), (B), and (D).

## **PRAYER FOR RELIEF**

WHEREFORE, the Secretary of Labor prays that this Court enter an Order:

1.      Requiring Wilmington to restore all losses caused to the ESOP as a result of Wilmington's fiduciary breaches, plus interest.

2.      Requiring Wilmington to disgorge, and restore to the ESOP, all fees earned from the 2011 ESOP Transaction and the fees subsequently paid to it as ongoing trustee of the ESOP and the ESOP's assets.

3.      Enjoining Wilmington from acting as a trustee, fiduciary or service provider in any ESOP transaction.

4.      Declaring that the indemnification provisions are void under ERISA, enjoining Wilmington from seeking or receiving any payments under the indemnification agreements with HCMC, and requiring Wilmington to repay to HCMC any amounts paid by HCMC pursuant to the indemnification provisions.

5.      Granting such other relief as may be equitable, just, and proper.

Dated:  August 21, 2017                    Respectfully submitted:


For the Secretary:

NICHOLAS C. GEALE
Acting Solicitor of Labor

G. WILLIAM SCOTT
Associate Solicitor
Plan Benefits Security Division

*Robert L. Furst*
ROBERT L. FURST
Counsel for Litigation
Plan Benefits Security Division
Furst.Robert@dol.gov
New York Bar No. 1350404
S.D.N.Y. No. DOLRF


STEPHEN SILVERMAN
Senior Trial Attorney, DC Bar No. 985297
Kira Hettinger, DC Bar No. 101657
Trial Attorney
Office of the Solicitor
Plan Benefits Security Division
U.S. Department of Labor
P.O. Box 1914
Washington, DC  20013
Tel: (202) 693-5600
Fax: (202) 693-5610
Silverman.Stephen@dol.gov
Hettinger.Kira.L@dol.gov


Attorneys for Plaintiff